UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br>Plaintiff, <br><br>v. <br><br>JAIME ROBLES CASTELLON, et al., <br><br>Defendants. | Case No. 15-cv-01941-WHO <br><br>**ORDER DENYING MOTION TO QUASH AND TO VACATE DEFAULT AND GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT** <br><br>Re: Dkt. Nos. 26, 27 |

On October 14, 2015, I heard argument on defendant Casa Robles Inc. and Ranferi Gomez's motion to quash service of summons and to vacate default and plaintiff's motion for default judgment against defendants Casa Robles Inc., Gomez, and Jaime Robles Castellon. For the following reasons, I DENY defendants' motion to quash and to vacate and GRANT plaintiff's motion for default judgment in the amount of $2200.

## BACKGROUND

Plaintiff, the exclusive licensor of rights to exhibit certain closed circuit and pay-per-view sports programming, brought suit against defendants Casa Robles Inc., Gomez, and Castellon individually and all as doing business as Casa Robles Mexican Restaurant, operating at 3839 Washington Blvd., Fremont, California. Dkt. No. 1. The complaint alleges that defendants showed a program in the Casa Robles Mexican Restaurant without a license. Plaintiff's complaint alleges that defendants are liable under the Federal Communications Act (47 U.S.C. § 605 et seq.) and the Cable Communications Policy Act (47 U.S.C. § 553 et seq.) for receiving, intercepting and assisting in the receipt or interception of licensed programming. The complaint also alleges claims for conversion and violation of the California Business and Professions Code Section 17200.

Plaintiff alleges it secured the nationwide commercial distribution rights to *Floyd*

1  *Mayweather, Jr. v. Marcos Rene Maidana WBC Welterweight Championship Fight Program*,
2  telecast on Saturday May 3, 2014, including the undercard bouts and commentary ("Program").
3  Plaintiff asserts that had defendants wished to legally broadcast the Program, the cost would have
4  been $2,200. Plaintiff's hired private investigator was present in the restaurant on the evening of
5  the fight, May 3, 2014, and saw that the Program was being aired before the boxing actually
6  began. *See* Affidavit of Yolanda Poblete, Docket No. 27-3. The investigator did not pay a cover
7  charge and there were between 21 and 29 patrons in the restaurant between 7:51 and 8:24 p.m.

8  Plaintiff filed a complaint against the defendants on April 29, 2015, and filed proofs of
9  service attesting that defendants were served on July 8, 2015. Docket Nos. 14-16. The defendants
10 did not answer, and on August 7 and August 24, 2015, the Clerk entered defaults against each
11 defendant. Docket Nos. 21, 25.

12 On September 3, 2015, counsel appeared on behalf of defendants Casa Robles Inc. and
13 Gomez by filing a motion to quash service and to vacate the defaults based on the argument that
14 service against those two defendants was defective. Docket No. 26. On September 4, 2015,
15 plaintiff filed a motion seeking entry of default judgment against all three defendants. To date,
16 defendant Castellon has not appeared individually or through counsel.

## DISCUSSION

### I. MOTION TO QUASH AND VACATE DEFAULT

Casa Robles Inc. and Gomez move to quash service of process, arguing that service was ineffectual on Casa Robles because the authorized agent for service was not the person served and ineffectual on Gomez because he was served by substitute service at the restaurant, which is not his residence or normal place of business. Docket No. 26. With respect to Casa Robles Inc., the proof of service demonstrates that service was made at the restaurant on "Jaime Robles," who plaintiff asserts (and defendants do not dispute) is the "Jaime Robles Castellon" listed on the restaurant's liquor license as a Director and the President of Casa Robles Inc. and who is the third defendant in this case. Docket Nos. 16, 27-3.[1] The fact that service was not made on Casa Robles

---

[1] Defendant Casa Robles Inc. does not argue that Jaime Robles – who was personally served at 1:05 p.m. on 7/8/15 behalf of Casa Robles Inc. – is not Jaime Robles Castellon who was also

2

Inc.'s registered agent for service does not matter. Service on an officer of a corporation is sufficient. F.R.C.P. 4(h)(1)(B).

With respect to Gomez, the proof of services shows that "substitute service" was made by delivering the summons and related materials to Jaime Robles at the restaurant after three separate attempts at personal service. Docket No. 15. The federal rules allow plaintiffs in this District to "borrow" the service rules of California. F.R.C.P. 4(e)(1). Under California law, "substitute service" is allowed at a defendant's "usual place of business," after diligent attempts at personal service. Cal. C.C.P. § 415.20(b). Three attempts at personal service at a proper place is diligent. *American Express Centurion Bank v. Zara*, 199 Cal.App.4th 383, 389 (2011) (to qualify as reasonable diligence, two or three attempts must first be made to personally serve the defendant). "Usual place of business" includes "a defendant's customary place of employment as well as his own business enterprise." *Id.* (Judicial Council Comment). Defendant Gomez is listed on the restaurant's current liquor license as a "Director" and "Vice-President" of the enterprise. Defendant Gomez admits that he works "occasionally" at the restaurant, although he works full time for another business. Docket No. 26. In light of these facts, I conclude that Casa Robles Inc. is appropriately considered Gomez's own business enterprise for purposes of service.

Defendants Casa Robles Inc. and Gomez make no other argument why service should be quashed or the defaults set aside. Finding that service was adequate in this case, I will consider the request for entry of default judgment, which has not been opposed on its merits by the appearing defendants.

## II. MOTION FOR ENTRY OF DEFAULT JUDGMENT

The Federal Communications Act, 47 U.S.C. § 605 et seq., prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming. The Act allows an aggrieved party to bring a civil action in federal district court and permits that party to elect an award of either statutory or actual damages. *See* 47 U.S.C. § 605(e)(3)(C)(I). The statute allows the court to award between $1,000 and $10,000 for each violation of section 605 as

---

personally served at 1:05 p.m. on 7/8/15 and is named as the third defendant in this case. *See* Docket Nos. 14, 16.

it considers just. *Id*. at § 605(e)(3)(C)(i)(II). The Court may increase its award by not more than $100,000 when the violation has been "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff's application for default judgment contends that defendants' violation of 47 U.S.C. § 605 et seq. was willful and that this Court should enter default judgment in the amount of the statutory maximum, $110,000 plus $2,200 for conversion damages. Docket No. 27-5.

I will not award plaintiff the statutory maximum. The allegations in a complaint regarding the monetary amount of damages that should be granted in a default judgment are not controlling, and "the mere assertion that defendants acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000). Courts that have awarded enhanced damage awards due to willful violations of the Communications Act have cited such factors as the repeated violation of the Act, the intent to profit from the violations, and actual profit derived from the violation. *Id*. at 1197-98. Plaintiff's papers do not disclose whether defendants advertised the broadcast and plaintiff's affiant did not pay a cover charge to enter defendants' establishment. According to the affidavit of Ms. Poblete, the capacity of defendant's establishment is "65+" people, and during three separate head counts only 21 - 29 patrons were present.

Further, Ms. Poblete does not state that she saw any of the boxing in the Program. She only saw event commentary prior to an undercard bout. Finally, while Ms. Poblete states that there were 5 televisions in the restaurant, she does not state that the Program was broadcast on all five televisions, nor does she state on how many televisions she observed the Program.

"Courts in this district have considered several cases involving pirating of closed-circuit sports broadcasts and, absent a showing of egregious wrongdoing, generally have awarded damages slightly over the statutory minimum." *Universal Sports Network v. Jimenez*, No. C–02–2768–SC, 2002 WL 31109707, at *1 (N.D. Cal. Sept. 18, 2002). The Court finds that an enhanced damage award is not warranted under the statute. Under 47 U.S.C. § 605(e)(3) the Court may award statutory damages between $1,000 and $10,000 for a violation of the Act. Based on the facts alleged – including the fact that the license fee was $2,200, the establishment did not charge

4

a cover fee, the absence of allegations that defendants are repeat offenders or that defendants advertised the program, and the fact that there were not many patrons – I find that an award of $2,200 is appropriate.

Plaintiff also requests default judgment on its state law claim of conversion. I find that the statutory damages in the amount of $2,200 sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted. Further, plaintiff's conversion claim raises what one judge in the Eastern District of California has called "the thought-provoking question of whether an interest in intangible property such as an exclusive license to distribute a broadcast signal is the proper subject of a claim of conversion under California law." *See J & J Sports Productions, Inc. v. Hernandez*, No. 09-CV-3389 GEB KJN, 2010 WL 1980186, *6 n.12 (E.D. Cal. May 17, 2010). California state and federal courts have reached varying conclusions. *Compare, e.g., Fremont Indem. Co. v. Fremont Gen. Corp*., 148 Cal. App. 4th 97, 119 (Ct. App. 2007) (noting California courts' traditional refusal to recognize as conversion the unauthorized taking of intangible interests not merged with or reflected in something tangible), *with DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (observing that courts have relaxed tangibility requirement, and granting summary judgment for conversion of satellite broadcast programming) and *Don King Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (finding that plaintiff's exclusive rights to distribute program in California qualified as right to possession of property under conversion claim).

## CONCLUSION

For the foregoing reasons, I DENY defendants' motion to quash and to vacate and GRANT plaintiff's motion for default judgment, awarding $2,200 to plaintiff.

**IT IS SO ORDERED**.

Dated: October 16, 2015

WILLIAM H. ORRICK
United States District Judge